UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES SORRENTINO, <br><br>    Plaintiff <br><br>v. <br><br>BOSTON SYMPHONY ORCHESTRA, INC., <br><br>    Defendant | ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION NO. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff James Sorrentino ("Sorrentino"), by and through his attorneys, states and alleges as follows:

## NATURE OF ACTION

1. Sorrentino brings this action against his former employer, defendant Boston Symphony Orchestra, Inc. ("the BSO"), to recover amounts due to him now and in the future under the BSO's pension, retirement and defined benefit plan, as amended. Sorrentino also makes claims against the BSO for its failure to comply with the Employment Retirement Income Security Act, as amended (ERISA), and for the BSO's breach of fiduciary duty, breach of contract and negligent misrepresentation. In addition, Sorrentino requests a declaratory judgment adjudicating his rights, and the BSO's obligations, to pay all amounts that are or will become due to him in the future under the BSO pension plan. Finally, Sorrentino is entitled to and requests an award of reasonable attorneys' fees and costs incurred in pursuing these claims against the BSO under ERISA Section 502(a)(2).

2.      For a period spanning forty (40) years, Sorrentino was a "non-playing employee" of the BSO (i.e., not a member of the orchestra). During the course of his long years of service, Sorrentino made numerous attempts to ascertain his pension plan benefits under the BSO's pension, retirement and defined benefit plan. In response to his repeated requests for clarification of the amount of pension year credits he had earned, Sorrentino was provided instead with inconsistent and contradictory information. Sorrentino also made numerous requests for copies of plan documents, and documentation of the BSO's purported calculation of his expected pension benefits. In response, the BSO provided Sorrentino with incomplete and inaccurate information and, in some cases, no information at all. The BSO's repeated failures to provide accurate and timely information regarding Sorrentino's credited years of service and its refusal to provide documentation of his expected pension plan benefits constitute violations of the BSO's obligations under ERISA, and a breach of the fiduciary obligations owed by the BSO to Sorrentino as a plan participant. In addition, the BSO's conduct constitutes a breach of contract and misrepresentation, for which Sorrentino seeks recovery.

## PARTIES

3.      Sorrentino is an individual who resides in Quincy, Massachusetts. Sorrentino was previously employed by the BSO, and at all relevant times was a qualified plan participant under the BSO's pension, retirement and defined benefit plans, as described below.

4.      Upon information and belief, the BSO is a non-profit corporation, organized in the Commonwealth of Massachusetts with a principal place of business at 301 Massachusetts Avenue, in Boston, Massachusetts.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the ERISA statute, 29 U.S.C. §1001 et seq.

6. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(1) and (2) because both parties reside in this district and a substantial part of the events giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

7. Sorrentino first became a non-playing employee of the BSO, on a part-time basis, in 1970. At that time, Sorrentino began working for the Event Services Department of the BSO.

8. With the exception of the three-year period between 1985 and 1988, Sorrentino was employed by the BSO in either a part-time or full-time capacity between 1970 until 2010 when he was involuntarily laid off by the BSO. During this forty (40) year period of time, Sorrentino held various positions in the BSO's Event Services Department.

9. Upon information and belief, the BSO initially adopted a Pension, Retirement and Defined Benefit Plan for Non-Playing Employees in 1957. Upon information and belief, the plan has been amended and revised several times between 1957 and the present. The BSO's pension, retirement and defined pension plan (the "BSO Pension Plan") is governed by, and subject to, the Employment Retirement Income Security Act, as amended (ERISA). The BSO Pension Plan was in effect during the entire period that Sorrentino was employed by the BSO.

10. Beginning in 1970 and for a period of at least five (5) years, Sorrentino was paid by the BSO in cash. For a period of time, the BSO paid Sorrentino partially in cash and partially by check. During this period, the BSO kept no or inadequate records of the number of hours Sorrentino worked for the BSO and it kept no or inadequate records of the amount of wages paid

to him. Upon information and belief, the BSO also failed to report all of the wages it paid to Sorrentino to the Social Security Administration, and it failed to pay all, or a substantial portion, of the employer's share of Sorrentino's Social Security taxes.

11. Upon information and belief, the BSO's failure to maintain adequate records of the amount of hours worked by Sorrentino and the amount of wages paid to him during the period between 1970 and 1985 has prevented the BSO from accurately determining the amount of pension year credits to which Sorrentino is properly entitled under the BSO Pension Plan.

12. By 2007, if not earlier, the BSO was aware that, in determining pension credits, the BSO should have given due consideration to the fact that, for several years, Sorrentino was paid by the BSO in cash, but the BSO failed to do so.

13. The BSO admitted to Sorrentino that it could not make a proper determination of his pension credits for these years because it lacked sufficient records. Sorrentino offered to assist the BSO in ascertaining his eligibility for pension credits accrued during this period, but the BSO refused.

14. For the 15-year period of employment between 1970 and 1985, the BSO has failed to account for the actual amount of pension credits to which Sorrentino is entitled. Upon information and belief, the BSO has never even attempted to ascertain the actual amount of pension credits to which Sorrentino was entitled for this period. The BSO has failed to include any portion of Sorrentino's years of employment between 1970 and 1985 in calculating his eligibility for pension benefits under the BSO Pension Plan.

15. In addition to its failure to account for pension credits for Sorrentino's years of employment between 1970 and 1985, the BSO has also failed to properly account for the pension credits to which he is entitled for his subsequent years of employment.

16. On various dates beginning in 2007, if not earlier, Sorrentino attempted to obtain information and clarification from the BSO concerning its calculation of his pension credits under the BSO Pension Plan.

17. On June 27, 2007, Sorrentino wrote an e-mail to Kathleen Sambuco ("Sambuco"), the then-Benefits Manager for the BSO, in which he requested information about the years of service for which he would be credited under the BSO Retirement Plan.

18. In the June 27, 2007 e-mail, Sorrentino expressed concerns about the BSO's scarce payroll records during the period of time he was paid in cash. Sorrentino also indicated that he had made previous attempts to obtain clarification of his pension benefits from the BSO to no avail. Accordingly, Sorrentino requested Sambuco to provide him with a written statement concerning his eligibility for pension benefits under the BSO Pension Plan.

19. Two months later, Sambuco informed Sorrentino that the she was "still working" with BSO's payroll department and with its third party administrator in order to "piece together" the information he had requested.

20. More than five months later, on December 7, 2007, Sambuco informed Sorrentino that, as of that date, Sorrentino would be credited with twenty-two (22) years of service with the BSO, corresponding to the period between 1985 and 2007. Sambuco indicated that no pension credit would be given for Sorrentino's employment during the period, 1970 to 1985. In a Memorandum dated December 7, 2007, a copy of which was provided to Sorrentino, Sambuco stated: "To ensure you are credited the correct number of years upon retirement, a copy of this memorandum is on file at Segal Company, the actuary, and in your BSO personnel file." Despite this representation, the BSO ignored its own conclusions and, as demonstrated in its

subsequent communications with Sorrentino, it failed to ensure that Sorrentino was credited with the correct number of years for calculating his pension benefits under the BSO Pension Plan.

21.     On October 30, 2009, Sorrentino requested Sambuco to provide a summary of the retirement benefits that he had accrued through that date under the BSO Pension Plan.

22.     On November 19, 2009, Sambuco forwarded a summary to Sorrentino, which had allegedly been prepared by an outside consultant to the BSO. The summary indicated, incorrectly, that Sorrentino's date of hire was September 29, 1988. The summary estimated, also incorrectly, that Sorrentino had accrued only 17 years of service as of August 31, 2008.

23.     In her cover memorandum to Sorrentino, Sambuco acknowledged that the consultant's date of hire of 1988 was incorrect. However, Sambuco stated that Sorrentino's date of hire should have been reflected as 1985, which was also incorrect. Sambuco further falsely informed Sorrentino that the consultant's projection was nevertheless "still close" to the actual benefit he would receive upon retirement.

24.     In addition, the representation made by Sambuco in November 2009 that Sorrentino had accrued only seventeen (17) years of service under the BSO Pension Plan as of that date was entirely inconsistent with her prior representation, made in December 2007, that Sorrentino had accrued twenty-two (22) years of service as of 2007, two years earlier.

25.     On November 20, 2009, Sorrentino wrote an e-mail to Sambuco requesting further clarification of the pension credit that he had accrued. In response, Sambuco admitted that the BSO consultant's calculation was erroneous. Sambuco stated that, if corrected for the date of hire, Sorrentino was entitled to 20 years of service as of 2008; this statement was also incorrect.

26. Sambuco also stated that, by her calculations, Sorrentino was entitled to 23 years of service as of November 2009. Once again, this representation was entirely inconsistent with the BSO's prior representation in December 2007 that Sorrentino had accrued twenty-two (22) years of service through 2007 alone. Sorrentino requested that Sambuco research the matter further.

27. On December 10, 2009, Sorrentino wrote an e-mail to Sambuco inquiring about the status of the BSO's investigation into the calculation of his pension benefits. Among other things, Sorrentino specifically requested that the BSO provide information concerning the pension credits that had accrued prior to 1985.

28. Sambuco informed Sorrentino that, in order to answer this question, she would require records from the Social Security Administration. On December 18, 2009, with Sorrentino's permission, Sambuco wrote to the Social Security Administration, requesting a report of Sorrentino's reported earnings from the BSO. Had the BSO maintained proper and adequate payroll records for Sorrentino- which it did not- there would have been no need to request this information from the Social Security Administration.

29. On or about February 19, 2010, the Social Security Administration produced an earnings report for Sorrentino to the BSO. As Sorrentino had feared, the Social Security Administration's earnings report reflected that ***no earnings*** were reported by the BSO to the Social Security Administration for the period between 1970 and 1975, when he was paid in cash, and reflected only minimal earnings for the period, 1976 through 1980. Once again, Sorrentino requested, and Sambuco agreed, to review his eligible years of credit for determining his pension benefit under the BSO Pension Plan.

30. By letter dated June 18, 2010, Sambuco informed Sorrentino that the BSO had "finally" resolved the questions concerning his years of credit under the BSO Pension Plan. She stated, "You will receive 24 years and 3 quarters of a year for pension purposes." Sambuco further indicated that the BSO's actuary would provide a calculation of Sorrentino's pension benefits based on this determination.

31. Just ten (10) days later, by letter dated June 29, 2010, the BSO reversed course again. At that time, Sambuco informed Sorrentino that, an error had been made, and that the BSO would only credit him with 21.75 years of service in determining his pension benefits under the BSO Pension Plan.

32. Sorrentino's last day of employment with the BSO was on or about April 30, 2010.

33. Since then, through counsel, Sorrentino has continued to seek clarification from the BSO concerning the amount of pension credits to which he is entitled under the BSO Pension Plan, to no avail.

34. In March 2013, the BSO indicated that it would re-adjust the amount of years for which Sorrentino would receive pension credits upward to 22 years of service. This represented an adjustment of 0.25 years of credited service from the BSO's prior calculation of 21.75 years of service. The BSO's latest calculation, like its several, conflicting prior calculations, greatly underestimates the actual amount of Sorrentino's years of service. As a direct result of the BSO's miscalculations, Sorrentino will be deprived of the full amount of pension benefits to which he is entitled under the BSO Pension Plan.

35. The BSO's actions and conduct, as described above, constitute a violation of ERISA, and of the regulations promulgated thereunder.

**COUNT I**
**(VIOLATION OF ERISA, SECTIONS 502 and 503)**

36. Sorrentino repeats and reavers the allegations contained in paragraphs 1 - 35 above.

37. Under ERISA Section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), the beneficiary of a pension or defined benefit plan is entitled to bring a civil action to recover benefits due to him under the plan, to enforce his rights under the plan terms and to clarify his rights to future benefits. The BSO Pension Plan is a pension or defined benefit plan within the meaning of ERISA. Sorrentino is a beneficiary of an ERISA-regulated pension or defined benefit plan.

38. Under ERISA Section 502(a)(3) (29 U.S.C. § 1132(a)(3)), a civil action may be brought by a plan participant to: (A) enjoin acts or practices that violate ERISA Title I or the plan terms; and (B) to obtain other appropriate equitable relief to (i) remedy such violations; or (ii) enforce any provisions of ERISA Title I or the plan terms. Thus, in addition to his claim for losses resulting from the incorrect determination of his pension benefits, Sorrentino is entitled to obtain equitable relief to enforce his rights under ERISA and the BSO Pension Plan.

39. ERISA Section 502(a)(1)(A) (29 U.S.C. § 1132(a)(1)(A)) permits a plan participant to obtain relief for a plan administrator's refusal to supply requested plan information.

40. As described above, the BSO continually provided incorrect and contradictory information to Sorrentino concerning his pension benefits and it repeatedly delayed in providing the information that Sorrentino requested, in violation of ERISA.

41. ERISA Section 503 (29 U.S.C. §1133) provides beneficiaries like Sorrentino with a cause of action against plans and plan administrators. Under ERISA Section 503, beneficiaries may enforce the duty that plans and plan administrators have to follow the procedural rules governing the administration of benefits. As described above, on repeated occasions, the BSO

failed to respond to Sorrentino's requests for information and it failed to provide full and accurate information concerning the calculation of his pension benefits under the BSO Pension Plan.

42. The BSO's actions and conduct, as described above, constitute multiple violations of the BSO's obligations under the BSO Pension Plan and under ERISA.

43. As a direct and proximate cause of the BSO's wrongful conduct, Sorrentino has and will continue to suffer substantial harm now and in the future, including but not limited to a loss of pension benefits, for which he requests monetary and equitable relief. In addition, Sorrentino is entitled to an award of attorneys' fees and costs incurred in pursuing his claims against the BSO.

## COUNT II
## (BREACH OF FIDUCIARY DUTY – BY STATUTE AND UNDER FEDERAL COMMON LAW)

44. Sorrentino repeats and reavers the allegations contained in paragraphs 1 - 43 above.

45. Under ERISA Section 502(a)(2) (29 U.S.C. § 1132(a)(2)), pension plan participants are entitled to recover monetary losses incurred as a result of the breach of fiduciary duty. Under ERISA Section 502(a)(2), fiduciaries are personally liable for losses incurred due to the breach of these duties. Sorrentino is a pension plan participant and the BSO is a fiduciary within the meaning of ERISA.

46. By statute and under federal common law, the BSO had a fiduciary duty to Sorrentino to act with the utmost good faith and fidelity.

47. The BSO breached its fiduciary duty to Sorrentino by, among other things, providing inaccurate and misleading information concerning the accrual of Sorrentino's pension

credits under the BSO Pension Plan and by failing to accurately determine Sorrentino's actual pension benefits.

48. As a direct and proximate result of the BSO's breach of fiduciary duty, Sorrentino has suffered a loss of pension benefits, for which he requests monetary and equitable relief. In addition, Sorrentino is entitled to an award of attorneys' fees and costs incurred in pursuing his claims against the BSO for breach of fiduciary duty.

## COUNT III
### (BREACH OF CONTRACT)

49. Sorrentino repeats and reavers the allegations contained in paragraphs 1 - 48 above.

50. As a former employee of the BSO, Sorrentino has a contractual right to enforce his rights under the BSO Pension Plan, of which he was and is an intended beneficiary.

51. The BSO's actions and conduct, as described above, constitute a breach of its contractual obligations to Sorrentino under the BSO Pension Plan.

52. The BSO's actions and conduct, as described above, have proximately caused Sorrentino to suffer a loss, including but not limited to the pension benefits he is entitled to receive under the BSO Pension Plan.

## COUNT IV
### (NEGLIGENT MISREPRESENTATION)

53. Sorrentino repeats and reavers the allegations contained in paragraphs 1 - 52 above.

54. The BSO's inaccurate, incomplete and contradictory statements concerning Sorrentino's pension credits, constitutes negligent misrepresentations by the BSO. The BSO

made these negligent misrepresentations with the knowledge and intent that Sorrentino would rely on them.

55.     As a result of the BSO's negligent misrepresentations, Sorrentino has suffered a loss including but not limited to the pension benefits he is entitled to receive under the BSO Pension Plan.

## COUNT V
## (REQUEST FOR DECLARATORY JUDGMENT)

56.     Sorrentino repeats and reavers the allegations contained in paragraphs 1 - 55 above.

57.     An actual justiciable controversy exists between Sorrentino and the BSO concerning the pension benefits to which he is entitled under the BSO Pension Plan and applicable law.  Accordingly, Sorrentino seeks a declaration of his rights pursuant to the declaratory judgment statute, 28 U.S.C. §2201 et. seq.

58.     The BSO's latest calculation is that Sorrentino is entitled to twenty two (22) years of service in determining his benefits under the BSO Pension Plan.  This calculation, like the BSO's several, conflicting prior calculations, greatly underestimates Sorrentino's actual years of service.  If his years of service are properly calculated, upon information and belief, Sorrentino is entitled to the maximum pension benefit available under the BSO Pension Plan, corresponding to thirty (30) years of service.

59.     Sorrentino seeks a judgment from this Court to adjudicate the actual number of years of service for which he should be credited under the BSO Pension Plan and otherwise adjudicating his rights, and the BSO's obligations, under the BSO Pension Plan and applicable law.

## REQUESTED RELIEF

WHEREFORE, plaintiff James Sorrentino respectfully requests that this Court:

a. Grant judgment in his favor on all counts of the Complaint;

b. Award damages to him on Counts I through IV of the Complaint, in an amount to be established at trial, together with interest and costs;

c. Enter an order declaring Sorrentino's rights, and the BSO's obligations, under the BSO Pension Plan and applicable law;

d. Award Sorrentino his attorneys' fees and costs incurred in pursuing these claims against the BSO; and

e. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
JAMES SORRENTINO
By his attorneys,

/s/James E. O'Connell
James E. O'Connell, Jr., BBO# 376475
joconnell@pbl.com
Jon C. Cowen, BBO #552961
jcowen@pbl.com
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
617-973-6100